# 14-4385-cv

## United States Court of Appeals

### *for the*

## Second Circuit

HENRY H. BRECHER, Individually and on behalf of all others
similarly situated,

*Plaintiff-Appellee,*

— v. —

REPUBLIC OF ARGENTINA,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF DEFENDANT-APPELLANT
THE REPUBLIC OF ARGENTINA**

| | |
|---|---|
| *Of Counsel:* | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| Jonathan I. Blackman | *Attorneys for Defendant-Appellant* |
| Carmine D. Boccuzzi | One Liberty Plaza |
| Daniel J. Northrop | New York, New York 10006 |
| Jacob H. Johnston | (212) 225-2000 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... ii

PRELIMINARY STATEMENT ......................................................... 1

JURISDICTIONAL STATEMENT .................................................... 3

ISSUES PRESENTED FOR REVIEW ............................................... 4

STATEMENT OF THE CASE ........................................................... 4

   I.   THE ORIGINAL CLASS CERTIFICATION ORDER AND PRIOR DECISIONS BY THE COURT .................................................... 5

   II.  PROCEEDINGS BEFORE THE DISTRICT COURT ON REMAND ........................................................................................ 9

SUMMARY OF THE ARGUMENT ................................................. 11

STANDARD OF REVIEW ............................................................... 13

ARGUMENT ..................................................................................... 14

   I.   THE DISTRICT COURT ERRED IN MODIFYING THE CLASS CONTRARY TO THIS COURT'S HOLDING IN *SEIJAS II* ................. 14

   II.  A CLASS WHOSE MEMBERSHIP IS INDETERMINABLE VIOLATES THE REQUIREMENT OF ASCERTAINABILITY AND THE DUE PROCESS RIGHTS OF ABSENT CLASS MEMBERS ........................................................................................ 15

       A. Plaintiff's Class is Unascertainable ......................................... 15

       B. Sufficient Notice to Absent Class Members is Impossible Under the Expanded Class Definition ..................................... 19

   III.  THE CLASS CERTIFICATION ORDER IMPERMISSIBLY EXPANDS THE CLASS AFTER THE DISTRICT COURT DETERMINED LIABILITY IN VIOLATION OF RULE 23(C) .......... 22

CONCLUSION .................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ................................................................... 22, 23, 27

*Amati v. City of Woodstock*,
176 F.3d 952 (7th Cir. 1999) ........................................................ 27

*Bakalar v. Vavra*,
237 F.R.D. 59 (S.D.N.Y. 2006) ................................................... 15-16, 17

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
280 F.R.D. 408 (N.D. Ill. 2012) ................................................... 19

*Bowers v. Windstream Ky. E., LLC*,
No. 3:09 Civ. 440-H, 2012 WL 216616 (W.D. Ky. Jan. 24, 2012) .............. 25

*Clay v. Am. Tobacco Co.*,
188 F.R.D. 483 (S.D. Ill. 1999) ................................................... 17

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ................................................................ 28

*Cordes & Co. Financial Services v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) .......................................................... 18-19

*DeBremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970) ...................................................... 16

*DeJulius v. New Eng. Health Care Emps. Pension Fund*,
429 F.3d 935 (10th Cir. 2005) ..................................................... 13-14

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................... 20

*Escott v. BarChris Constr. Corp.*,
283 F. Supp. 643 (S.D.N.Y. 1968) .............................................. 24-25

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ...................................................... 13

ii

**Page(s)**

*H.W. Urban GmbH v. Republic of Argentina*,
No. 02 Civ. 5699(TPG), 2003 WL 21058254 (S.D.N.Y. May 12, 2003) ......   6

*H.W. Urban GmbH v. Republic of Argentina*,
No. 02 Civ. 5699(TPG), 2004 WL 307293 (S.D.N.Y. Feb. 17, 2004)...........   6

*Hecht v. United Collection Bureau, Inc.*,
691 F.3d 218 (2d Cir. 2012)................................................................... 12, 20

*Hickory Secs. Ltd. v. Republic of Argentina*,
493 F. App'x 156 (2d Cir. 2012) .................................................... *passim*

*In re Fosamax Prods. Liab. Litig.*,
248 F.R.D. 389 (S.D.N.Y. 2008) ................................................... 12, 16, 17

*In re Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006).................................................................. 16

*In re Philip Morris Inc. (Philip Morris Inc. v. Nat'l Asbestos Workers Med.
Fund)*,
214 F.3d 132 (2d Cir. 2000)........................................................... 23, 24, 25

*In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
MDL No. 1703, 2007 WL 4287511 (N.D. Ill. Dec. 4, 2007)........................ 17

*In re Simon II Litig.*,
407 F.3d 125 (2d Cir. 2005)........................................................... 13

*In re Visa Check/MasterMoney Antitrust Litig. (Wal-Mart Stores, Inc. v.
Visa U.S.A. Inc.)*,
280 F.3d 124 (2d Cir. 2001)........................................................... 28

*In re Vivendi Universal, S.A. Sec. Litig.*,
284 F.R.D. 144 (S.D.N.Y. 2012) .................................................. 24, 27

*Isaacs v. Sprint Corp.*,
261 F.3d 679 (7th Cir. 2001) ......................................................... 25

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012)........................................................... 16

**Page(s)**

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012)........................................................ 9

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013)........................................................ 9

*Parker v. Time Warner Entm't Co., L.P.*,
331 F.3d 13 (2d Cir. 2003)........................................................ 13

*Postow v. OBA Fed. Sav. & Loan Ass'n*,
627 F.2d 1370 (D.C. Cir. 1980) .................................................. 25

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010)................................................. *passim*

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ...................................................... 14

*United States v. Cruz-Flores*,
56 F.3d 461 (2d Cir. 1995)........................................................ 13

*United States v. Emmenegger*,
329 F. Supp. 2d 416 (S.D.N.Y. 2004) ........................................ 14

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) .................................................... 21

*Weiner v. Snapple Beverage Corp.*,
No. 07 Civ. 8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ......... 16

**Rules and Statutes**

Advisory Committee Notes to 1966 Amendment to Rule 23(c)(3)............... 23-24

Advisory Committee Notes to 2003 Amendment to Rule 23(c)(1) ..............24, 25-26

28 U.S.C. § 1292(e) ................................................................ 4

28 U.S.C. § 2072(b) .............................................................. 26

iv

**Page(s)**

Fed. R. Civ. P. 23 ........................................................................ 19-20, 23-24

**Other Authorities**

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:2 (11th ed. 2014) ........................................................................................... 18

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:78 (11th ed. 2014) ........................................................................................... 20

3 William Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 8:5 (5th ed. 2011) ................................................. 21

7AA Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1785.4 (3d ed. 2005) ........................................................................................... 20

7AA Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1786 (3d ed. 2005) ........................................................................................... 20

## PRELIMINARY STATEMENT

Defendant the Republic of Argentina (the "Republic") appeals by permission of this Court under Federal Rule of Civil Procedure 23(f) from an order of the United States District Court for the Southern District of New York (Griesa, J.), dated August 29, 2014, modifying the class definition in a class action under Federal Rule of Civil Procedure 23(c)(1)(C) (the "Order"). The Order disregards express instructions from this Court in related actions and violates fundamental tenets of Rule 23 and the Due Process Clause of the Fifth Amendment.

The proceedings below followed remands in related actions from this Court in *Hickory Secs. Ltd. v. Republic of Argentina*, 493 F. App'x 156 (2d Cir. 2012) (summary order) ("*Seijas II*"), and *Seijas v. Republic of Argentina*, 606 F.3d 53 (2d Cir. 2010) ("*Seijas I*").[1] The basis for reversal in the *Seijas* appeals was plaintiffs' failure to identify members of the classes—defined as continuous holders of class bonds—in bondholder breach of contract class actions concerning defaulted Argentine debt. This failure resulted in indeterminate classes and speculative "aggregate" judgments because of the undisputed fact that in those cases, as here, secondary trading continues in the class bonds after class certification. In *Seijas II*, the Court accordingly required that in the absence of a

---

[1] Pursuant to the Court's Order granting the Republic's petition for permission to make this appeal, Order, *Republic of Argentina v. Brecher*, No. 14-3409 (2d Cir. Nov. 25, 2014) ("Nov. 25, 2014 Order"), this appeal will be heard on April 23, 2015, "in tandem with the [Seijas] appeals."

methodology producing a "reasonably accurate, non-speculative estimate" of aggregate damages, 493 F. App'x at 160, plaintiffs must prove damages on an "individual basis." *Id.*

Notwithstanding the Court's ruling in *Seijas II*, and tacitly conceding that he could not provide reasonably accurate aggregate damages calculations, plaintiff in the present case sought an aggregate judgment from the district court *using the same methodology rejected* in *Seijas II*. Hr'g Tr. at 7:18-19, No. 06 Civ. 15297(TPG) (S.D.N.Y. Aug. 29, 2012) (A-742) (Plaintiff's counsel: "Our methodology is the same as that in the *Seijas* case, and I will concede that."). The district court quite correctly refused to enter the aggregate judgment proposed by plaintiff, ruling that it would "do what the Court of Appeals said I had to do in *Seijas* [*II*]." *Id*. at 11:8-9 (A-746).

Despite this statement by the district court, what happened next was not at all what this Court had directed in *Seijas II*. Plaintiff did not present, as required by this Court's instructions in *Seijas II*, any evidence of damages that took into account the reality of secondary trading in class bonds. Rather, plaintiff—following the plaintiffs in the *Seijas* actions—moved the district court to start all over again, throw out the "continuous holder" class definition that governed this case for nearly five years, and certify a new class consisting of all holders of the relevant bond series at some future point. As in the *Seijas* actions, the district

2

court, over the Republic's objections, granted plaintiff's motion in order to "streamline arriving at judgments." Feb. 21, 2014 Hr'g Tr. at 7:11 (A-894). In thus disregarding this Court's holdings in *Seijas I* and *Seijas II*, the district court committed legal error.

Under plaintiff's expanded definition, it is impossible for anyone—the defendant, the courts, absent class members, or the class representative—even to purport to identify a single member of a definite class. Such an amorphous class violates Rule 23 and the due process rights of absent class members. The Order also violates Rule 23 by expanding the definition of the class *after* the district court made a determination on the merits and found the Republic liable to class members.

For each of these reasons, the Order should be reversed and vacated and the case remanded to the district court for the calculation of damages on an individual basis, as this Court held in *Seijas II*.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over plaintiff's underlying action against the Republic under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330 and 1605(a)(1).

Following the district court's Order modifying the class definition and granting class certification, the Republic timely filed a petition for permission to appeal under Federal Rule of Civil Procedure 23(f) and Federal Rule of Appellate

3

Procedure 5(a).  The Court granted the Republic's petition on November 25, 2014, noting that it would hear this appeal "in tandem with the [*Seijas*] appeals."  Nov. 25, 2014 Order at 25.  The Court has jurisdiction over the Republic's appeals under 28 U.S.C. § 1292(e).

## ISSUES PRESENTED FOR REVIEW

1.  Whether the district court erred by "modifying" the class definition in contravention of this Court's precedent and instructions in related actions.

2.  Whether the district court's Order violated the requirements of ascertainability and due process and the notice requirements of Rule 23 by certifying a class whose membership cannot as a matter of law be determined.

3.  Whether the district court's Order violated Rule 23(c) by expanding the class definition to include new members after a finding of class-wide liability.

## STATEMENT OF THE CASE

This appeal concerns a class certification order entered by the district court on August 29, 2014, at the behest of a class representative holding a beneficial interest of €52,000 in a series of Republic securities on which the Republic defaulted in December 2001.  The class, originally defined as all persons who continuously held beneficial interests in the relevant series of Republic bond from the filing of the complaint, was first certified on May 29, 2009 and claims

4

damages of over *€68 million*.  Rule 56.1 Statement, *Brecher v. Republic of Argentina*, No. 06 Civ. 15297(TPG) (S.D.N.Y. Dec. 6, 2011) (A-723).

The proceedings below followed remands in related proceedings, *Seijas II*, 493 F. App'x 156, and *Seijas I*, 606 F.3d 53, both of which vacated the district court's awards of aggregate judgments under a continuous holder class definition involving contract claims under Argentine bonds.  At issue in each of the two prior *Seijas* appeals was, *inter alia*, the entry of class-wide damage awards that failed to account for persons who had acquired (or sold) their bond interests in the secondary market after the complaints had been filed.  Such persons necessarily fell outside the class definition of persons who continuously held their bond interests from the filing of the complaint through entry of judgment.

After this Court's decision in *Seijas II*, plaintiff in this case moved on September 12, 2013 to "modify" the class definition governing his class and start all over again.  The district court entered plaintiff's proposed order granting their motion on August 29, 2014.  SPA-1.

## I.   THE ORIGINAL CLASS CERTIFICATION ORDER AND PRIOR DECISIONS BY THE COURT

Consistent with its certification rulings in each of the other class actions brought against the Republic, the district court originally certified a class in this case defined as persons who continuously owned interests in the relevant bond

series from the date of the filing of the class complaints through entry of judgment. Order Granting Class Certification, *Brecher v. Republic of Argentina*, No. 06 Civ. 15297(TPG) (S.D.N.Y. May 29, 2009) (A-364).

        The district court imposed the "continuous holder" requirement to deal with the undisputed fact that defaulted Republic debt trades in the secondary market. Without such a requirement, it correctly noted that the class would be "too vaguely defined," presenting a host of problems under Rule 23. *Compare, e.g.*, *H.W. Urban GmbH v. Republic of* Argentina, No. 02 Civ. 5699(TPG), 2003 WL 21058254, at *2 (S.D.N.Y. May 12, 2003) (denying certification of holder classes as "too vaguely defined," noting that "it is highly important that the boundaries of the class should be finite and well defined," with class members "reasonably identifiable"), *with H.W. Urban GmbH v. Republic of Argentina*, No. 02 Civ. 5699(TPG), 2004 WL 307293, at *3 (S.D.N.Y. Feb. 17, 2004) (certifying continuous holder class in part because "persons who buy or sell the bonds after [the filing of the complaint] would not be part of the class"). As a function of the class definition, holders who engaged in any purchase, sale, or transfer of their interests in the bond during the relevant period were automatically excluded from the class.

        Despite the district court's recognition of the problems posed by secondary trading, the court in 2009 entered aggregate judgments in favor of the

6

*Seijas* continuous holder classes totaling over $2.2 billion based on generalized, hypothetical calculations by plaintiffs that did not make any deduction for debt holders who had not held their bond interests continuously since the filing of the complaints. *See generally Seijas I*, 606 F.3d at 56, 58. The Republic appealed the district court's certification of the classes and the award of aggregate judgments.

On May 27, 2010, this Court in *Seijas I* affirmed the district court's certification of the eight classes under the continuous holder definition, but vacated the aggregate judgments. The Court held that "[e]stimating gross damages for each of the classes as a whole, without using appropriate procedures," improperly enlarged plaintiffs' rights by allowing them "to encumber property to which they have no colorable claim." *Id.* at 58-59. Accordingly, the Court vacated the judgments and remanded to the district court so that it could, "using the variety of tools available for assistance, consider alternative approaches that [] set damages awards that more closely reflect the losses class members experienced." *Id.* at 59.

On remand, the district court again entered aggregate judgments for the *Seijas* plaintiffs based on the same estimated calculations, and the Republic again appealed. On appeal, the Court again vacated the *Seijas* plaintiffs' aggregate judgments, holding that "the district court still has not adequately addressed, much less resolved, . . . the volume of bonds purchased in the secondary market after 2004 that were not tendered or are currently held by opt-outs or other litigants."

7

*Seijas II*, 439 F. App'x at 160. Rather, there was "little difference between the calculation of these aggregate judgments and that of the judgments [the Court] previously vacated in *Seijas I*." *Id.*

Unlike in *Seijas I*, where the Court remanded so the district court could consider "alternative approaches" to calculating damages, the Court in *Seijas II* mandated that specific proceedings be held. The Court provided specific instructions that the district court "conduct an evidentiary hearing to resolve [the issue of damages]." *Id.* At that hearing, the district court was to:

> (1) consider evidence with respect to the volume of bonds purchased in the secondary market after the start of the class periods that were not tendered in the debt exchange offers or are currently held by opt-out parties or litigants in other proceedings;

> (2) make findings as to a reasonably accurate, non-speculative estimate of that volume based on the evidence provided by the parties; [and]

> (3) account for such volume in any subsequent damage calculation such that an aggregate damage award would "roughly reflect" the loss to each class.

*Id*. The Court further instructed that if no "reasonably accurate, non-speculative estimate" of aggregate damages could be made, then the district court *must* "determine how to proceed with awarding damages on an individual basis." *Id.* ("Ultimately, if an aggregate approach cannot produce a reasonable approximation of the actual loss, the district court must adopt an individualized approach.").

8

## II.  PROCEEDINGS BEFORE THE DISTRICT COURT ON REMAND

After this Court's remand in *Seijas II*, the district court recognized that the Court's instruction there applies equally to the *Brecher* class here, which is identical to the *Seijas* classes but for the different series of bonds at issue.  In denying plaintiff's motion for summary judgment seeking the exact type of aggregate judgment this Court rejected in *Seijas II*, the district court held that it would "do what the Court of Appeals said I had to do in *Seijas* [*II*]."  Aug. 29, 2012 Hr'g Tr. at 11:9 (A-746).

However, plaintiff offered no evidence of trading in the class bond, likely out of concern that such data would result in an inordinately small or zero-value "aggregate" judgment because of the extensive trading that had occurred and continues to occur.  *See*, *e.g.*, *Seijas II*, 439 F. App'x at 160 (Seijas plaintiffs' expert "conceded that there was trading of bonds in the secondary market throughout and after the 2010 debt exchange offer"); *accord The Griesa Effect: Argentina's Defaulted Bonds are at Their Highest Levels*, *Infobae*, Jan. 15, 2013 (A-809) (citing Bloomberg as reporting that defaulted Republic bonds have doubled in price since this Court's October 26, 2012 *pari passu* decision[2]).  Indeed, the trading on defaulted Republic debt is further evidenced by the fact that, in the

---

[2] *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012); *see also NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013).

few months since the district court entered the Order, other plaintiffs have brought new individual suits against the Republic on approximately €3 million euros of beneficial interests in the same class bond on which the present action is based. Am. Compl., *Procella Holdings, L.P. v. Republic of Argentina*, No. 14 Civ. 8000(TPG) (S.D.N.Y. Oct. 23, 2014).

Rather than taking any steps to account for secondary market trading, plaintiff instead sought to expand the class definition from individuals who have held their interest in Republic bonds from the filing of the complaint to the entry of final judgment, to all holders of beneficial interests in such bonds, no matter when those interests were acquired, who hold them on some unspecified date. Motion, *Brecher v. Republic of Argentina*, No. 06 Civ. 15297(TPG) (S.D.N.Y. Sept. 12, 2013) (A-753).

On February 21, 2014, the district court held a joint hearing on the motions to modify the class definition filed by plaintiff and the *Seijas* plaintiffs. The district court did not address any of the issues raised by the Republic, other than to say, "I don't see any reason at all why the Court lacks discretion to expand the class definitions." Feb. 21, 2014 Hr'g Tr. at 7:3-4 (A-894). The Court further emphasized its belief that modifying the class definition "could streamline arriving at judgments," *id.* at 7:11 (A-894), notwithstanding the fact that to the extent holders brought individual suits against the Republic or participated in any future

10

exchange offer after final judgment, those judgments would necessarily be overstated. *See id.* at 8:14-9:3 (A-895).

The Court granted an appeal from the *Seijas* orders under Rule 23(f) on June 18, 2014. Notice, *Puricelli v. Republic of Argentina*, No. 14-2104 (2d Cir. June 18, 2014). Plaintiff in the instant case waited until July 2, 2014 to submit his proposed order certifying the newly expanded classes, which was identical to the *Seijas* orders. Over the Republic's objection, the district court on August 29, 2014 entered the certification order proposed by plaintiff.

The Court granted the Republic's petition for permission to appeal pursuant to Rule 23(f) on November 25, 2014, and this appeal followed.

## SUMMARY OF THE ARGUMENT

The Order should be reversed and vacated, and the case remanded to the district court for individualized damages proceedings, for three reasons.

*First*, the district court's order "modifying" the class definition impermissibly contravenes this Court's holding and instructions in *Seijas II*. The Court's precedent in that case required either that plaintiff present evidence sufficient to permit a non-speculative estimate of class damages or that damages be calculated on an individual basis. *Seijas II*, 493 F. App'x at 160. Disregarding this Court's instructions and instead modifying the class was legal error.

11

*Second*, the district court's Order violates Rule 23 by certifying a class that is unascertainable and that is defined in a way that makes sufficient notice to absent class members impossible.  Plaintiff's class is amorphous and ever-changing, both because it is defined solely by who holds a beneficial interest in the relevant securities on or after judgments are entered, and because secondary trading indisputably continues in class bonds.  As a result, neither the class representative, the Court, nor the Republic will be able to determine the membership of the class, in violation of the requirement that classes be ascertainable.  *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395-96 (S.D.N.Y. 2008) ("class membership must be ascertainable prior to the end of the action").

Further, absent class members who purchase class bonds after the notice and opt-out period—including on the day judgments are entered—will be bound by the class regardless of whether they received notice, in violation of the notice and opt-out requirements of the Due Process Clause of the Fifth Amendment and Rule 23.  *See Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) ("Absent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money damages.") (internal citation omitted).

12

*Third*, the new class definition violates Rule 23(c) by permitting new class members to enter the litigation (or not) after the district court reached a class-wide liability determination on the merits. The 1966 amendments to Rule 23—designed to prevent this so-called "one-way intervention"—preclude this result.

## STANDARD OF REVIEW

Because each of the issues presented by this appeal concerns errors of law by the district court, the Court's standard of review is *de novo*. The Court reviews *de novo* a district court's conclusions of law that have informed its class certification decision. *See Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 18 (2d Cir. 2003); *see also In re Simon II Litig.*, 407 F.3d 125, 132 (2d Cir. 2005) (district court abuses its discretion when its decision rests on error of law, such as application of wrong legal principle).

The Court also reviews *de novo* whether a district court's order complies with the notice rights of absent class members under the Due Process Clause. *United States v. Cruz-Flores*, 56 F.3d 461, 463 (2d Cir. 1995) ("We review the district court's application of constitutional due process standards de novo."); *see also Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (adequacy of notice under Due Process Clause and Rule 23 reviewed *de novo*); *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 942 (10th Cir. 2005)

13

(same); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (same).

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN MODIFYING THE CLASS CONTRARY TO THIS COURT'S HOLDING IN *SEIJAS II*

This Court's decisions are obviously binding on the district courts in this Circuit. *See United States v. Emmenegger*, 329 F. Supp. 2d 416, 436 (S.D.N.Y. 2004) (district courts are "obliged to follow [Second Circuit] precedent"). In *Seijas II*, this Court specifically rejected an aggregate damages award in substantively-identical cases and gave the district court specific instructions to conduct an evidentiary hearing on damages, and "if no reasonably accurate, non-speculative estimate" of aggregate class-wide damages could be made, to "adopt an individualized approach" to calculating damages. *Seijas II*, 493 F. App'x at 160 (emphasis added); *see also id.* at 160 n.2 ("first entering aggregate judgments inconsistent with the foregoing and then moving forward with an individual claims process would not allay our concerns").

The district court correctly recognized that the Court's instruction in *Seijas II* applied equally to plaintiff here. Aug. 29, 2012 Hr'g Tr. at 11:23-24 (A-746) (rejecting plaintiff's motion for summary judgment on damages and holding that the district court would "try to obey the Court of Appeals [in *Seijas II*]

14

and have that hearing"); *see also id*. at 12:4-9 (A-747) ("The Court of Appeals has given me a direction in *Seijas*, which I'll follow . . . it seems to me that I would be better grounded in dealing with your case if I really combine the two cases [*Brecher* and *Seijas*] and had a hearing about the two cases.").  Notwithstanding this clear instruction, plaintiff declined to proffer any evidence from which the amount of secondary trading in the relevant bond series could be determined, as required by *Seijas I* and *Seijas II*, in order to try to establish that aggregate damages may be calculated accurately here.  Pursuant to the holdings and instructions of this Court in *Seijas II*, the district court should therefore have proceeded to determine damages on an individual basis.  The district court did not do that.  The court's decision instead to certify a wholly new class was error, compounded by the fact that even apart from this Court's binding guidance on exactly the same issue in *Seijas II*, the new class definition violates basic principles of class action law.  *See infra* Points II-III.

## II.  A CLASS WHOSE MEMBERSHIP IS INDETERMINABLE VIOLATES THE REQUIREMENT OF ASCERTAINABILITY AND THE DUE PROCESS RIGHTS OF ABSENT CLASS MEMBERS

### A.  Plaintiff's Class Is Unascertainable

District courts within the Circuit and numerous Courts of Appeals agree that "Rule 23 contains an implicit requirement that the proposed class be precise, objective and presently ascertainable." *Bakalar v. Vavra*, 237 F.R.D. 59,

64 (S.D.N.Y. 2006) (internal quotation marks omitted); *accord., e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012) ("Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."); *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30, 45 (2d Cir. 2006) (recognizing "the implied requirement of ascertainability" as distinct from the predominance requirement of Rule 23(b)(3)). To be ascertainable, "the class must be readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742(DLC), 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010). Critically, "[w]hile class members need not be ascertained prior to certification, they must be ascertainable at some stage of the proceeding." *Bakalar*, 237 F.R.D. at 64; *accord In re Initial Pub. Offerings*, 471 F.3d at 45. Thus, "class membership must be ascertainable prior to the end of the action." *In re Fosamax*, 248 F.R.D. at 395-96.

By removing the continuous holder requirement from the class definition and certifying a class of all holders, no matter when they acquired their

16

interest, the Order on its face violates the requirement of ascertainability. As the

record on appeal and the *Seijas* decisions make clear, the bonds on which plaintiff

has brought suit are freely-negotiable instruments that are regularly traded on the

secondary market. *See, e.g.*, *Seijas II*, 493 F. App'x at 158; *see also supra* at 9-10.

The membership of the newly redefined class will therefore be amorphous,

consisting of ever-changing populations of holders that cannot, and will not, be

determinable prior to the end of these actions (or even after). The law is well-

settled that the certification of such a class is categorically barred by the

requirement that class membership be definite and ascertainable. *See In re*

*Fosamax*, 248 F.R.D. at 395-96; *Bakalar*, 237 F.R.D. at 64; *see also In re Sears*

*Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL No. 1703, 2007 WL

4287511, at *4 (N.D. Ill. Dec. 4, 2007) (class of all purchasers of Craftsman tools

not made in the USA "unidentifiable" because definition contained "no time

limitation or indication of what the class period would be"); *Clay v. Am. Tobacco*

*Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999) (finding unascertainable class of all

underage smokers because "a new set of plaintiffs would be added to the class each

day," and thus "[a]t no time during this case would the exact membership of the

class be ascertainable").

      Nevertheless, plaintiff claimed below that he had met his burden on

ascertainability because members of the class purportedly can be identified by

reference to "objective criteria." Plaintiff is wrong. First, there is nothing "objective" about a class defined with reference to *future events*, i.e., the identity of bondholders at some unknown point after final judgment. But in any event, ascertainability requires not only an objective definition, but also that the class be defined temporally such that class membership may be *presently* and readily identifiable. *See supra* at 16; *see also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:2 (11th ed. 2014) (noting both objectivity requirement and requirement that the class be defined by an appropriate time period). The Order indisputably fails to meet this prerequisite to certification, as neither the class representative, the courts, absent class members, nor the Republic are capable of determining class membership. To date, and after six years of litigation, no member of this class other than the named purported class representative, who holds €52,000 of the *tens of millions of euros* of class bonds on which he purports to bring suit, has ever been identified.

Moreover, plaintiff's proposition below that a class defined by possession of negotiable instruments is necessarily ascertainable because the court and the parties can determine the class's total potential claims proves too much. Plaintiff relies on *Cordes & Co. Financial Services v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007), a case in which this Court considered only whether the named plaintiff—an assignee—could adequately represent the class interests. On

18

its face, that case does not concern ascertainability, and the Court never determined whether a proper class could be certified there, leaving that determination for the district court on remand. *Id.* at 109.

Plaintiff's out-of-circuit, district court case, *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408 (N.D. Ill. 2012), is similarly unavailing. The court in *Boundas* held that "the identity of individual class members need not be ascertained *before class certification*." 280 F.R.D. at 417 (internal citations omitted and emphasis supplied). Members of the *Boundas* class—holders of expired Abercrombie & Fitch gift cards worth less than $25—would, however, be identifiable at some point in the litigation because there is no secondary market for expired gift cards. Here, the Court has already held that there *is* an active secondary market for the class bonds, so the issue is not, as it was in *Boundas*, that the parties do not presently have records identifying class members, but that putative class members will *never* be ascertainable because membership in the class is constantly shifting.

## B. Sufficient Notice to Absent Class Members is Impossible Under the Expanded Class Definition

The district court's certification of plaintiff's "holder" class is also improper as a matter of law because providing sufficient notice to an ever-changing, amorphous class is impossible. Federal Rule of Civil Procedure 23(c)(2)

19

requires that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed R. Civ. P. 23(c)(2)(B).

This notice requirement is neither discretionary nor required solely by the Federal Rules: "[a]bsent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money damages." *Hecht*, 691 F.3d at 222; *see also* 7AA Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1785.4 (3d ed. 2005) ("The court should exercise its power to alter or amend its class-action determination with great care, taking into account the due-process rights of the absent class members."). At minimum, notice procedures must provide class members with sufficient time to determine whether to opt out of the class. *Id.* § 1786; 1 McLaughlin, *supra* § 5:78 (courts ordinarily require "opt-out periods of between approximately 30 and 60 days from the time the notice is sent"); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) ("[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

20

The right to notice and to opt out under the Due Process Clause of the Fifth Amendment and Rule 23 cannot be met by a fluid class that is indeterminate and indeterminable, regardless of the methods of notice plaintiff uses. A person who acquires an interest in class bonds after the end of the notice and opt-out period, including on the day judgment is entered (and even after), will be a member of the class as defined by the Order and bound by the judgment, whether or not the transferee received notice and the opportunity to opt out and whether or not the transferee wished to be a class member. A class definition that precludes absent class members from receiving adequate notice and a right to opt out violates their due process rights, as well as Rule 23, as a matter of law. *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (decertifying class in part because "many potential members of the classes cannot yet know if they are part of the class. We therefore have serious due process concerns about whether adequate notice under Rule 23(c)(2) can be given to all class members to enable them to make an intelligent choice as to whether to opt out."); 3 William Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 8:5 (5th ed. 2011) ("[A]s to whether certification notice is necessary, the rule is absolute: certification of a (b)(3) class requires that notice be given."). For this reason too the Order must be vacated.

21

**III. THE CLASS CERTIFICATION ORDER IMPERMISSIBLY EXPANDS THE CLASS AFTER THE DISTRICT COURT DETERMINED LIABILITY IN VIOLATION OF RULE 23(c)**

A district court's authority to alter or amend a class definition does not as a matter of law permit plaintiff to expand the class definition nearly six years after this class was first certified and *after* class-wide liability has been determined. To the contrary, Rule 23(c) prohibits such a result.

Prior to 1966, Rule 23 allowed for so-called spurious class actions for money damages (actions in which class members had no preexisting common legal interest) so long as there was "a common question of law or fact affecting the several rights and a common relief [was] sought." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 545 (1974) (internal quotation marks omitted). But the rule contained no mechanism for determining in advance of final judgment who were members of the class and thus bound by the judgment. *Id.* at 545-46. Instead, class actions were "merely . . . an invitation to become a fellow traveler in the litigation, which might or might not be accepted" at the potential class plaintiffs' convenience. *Id.* at 546 (internal quotation marks omitted).

The shortcomings of this state of affairs were readily apparent. Potential class members "could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *Id.* at 547. Further, the failure of a district

22

court to decide class certification "early in the proceedings" had the potential to create "an atmosphere of confusion" and make "appellate review more difficult." *In re Philip Morris Inc. (Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund)*, 214 F.3d 132, 134 (2d Cir. 2000), *superseded on other grounds by* 2003 Amendments to Rule 23(c)(1) (internal quotation marks omitted). Accordingly, Rule 23 underwent substantial revision in 1966 to ensure that class certification decisions would be made prior to decisions on the merits and that new class members would not be permitted to enter the litigation after liability had been determined. *See Am. Pipe*, 414 U.S. at 546-49 ("The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.").

Rule 23(c), as amended, provided that determinations with regard to class certification must be made "as soon as practicable," *id.* at 549, with notice procedures making clear to potential class members in Rule 23(b)(3) classes that they will be bound by all judgments unless they request exclusion, Fed. R. Civ. P. 23(c)(2), and with Rule 23(b)(3) judgments—whether favorable or unfavorable to the class—specifying to whom notice was provided and whom the court finds to be members of the class, Fed. R. Civ. P. 23(c)(3). Thus, as explained by the Advisory Committee, "one-way intervention is excluded; the action will have been early

23

determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class." Advisory Committee Notes to 1966 Amendment to Rule 23(c)(3); *accord In re Philip Morris Inc.*, 214 F.3d at 135 (in light of amendments to Rule 23, "it is difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits" (internal quotation marks omitted)). These provisions remain in effect today.[3]

　　　　In light of Rule 23's amendments, district courts in this Circuit have expressly refused to expand a class after a determination of liability. *See In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 149 (S.D.N.Y. 2012) (plaintiff may not expand a class after the court has determined liability); *Escott v. BarChris Constr. Corp.*, 283 F. Supp. 643, 706 (S.D.N.Y. 1968) (rejecting plaintiffs' request to give notice to members of prospective class after determination of liability because "[t]o do so would be highly prejudicial to defendants. It would be of no benefit to the present plaintiffs, who will recover whatever damages they are found

---

[3] In 2003, Rule 23(c)(1)(A) was revised to state that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." As explained by the Advisory Committee Notes to the 2003 Amendments, the amendment's purpose was to provide flexibility such that the district court could efficiently reach a class certification decision, including by gathering "information necessary to make the certification decision," permitting discovery on issues relevant to class certification, or reviewing a trial plan. Advisory Committee Notes to 2003 Amendment to Rule 23(c)(1). It did not reinstitute one-way intervention.

24

to be entitled to, regardless of the other members of the class."); *see also Isaacs v. Sprint Corp.*, 261 F.3d 679, 681-82 (7th Cir. 2001) (granting Rule 23(f) petition and reversing grant of class certification in part because certification order violated rule against one-way intervention); *cf. In re Philip Morris Inc.*, 214 F.3d at 135 (instructing district court to decide class certification prior to trial to "abate" the "specter of a risk-free intervention").

By contrast, neither the district court nor plaintiff cited a single case that has permitted a post-liability expansion of a Rule 23(b)(3) damages class since Rule 23's amendment, and the Republic is aware of none.[4] Nor is that surprising. The 2003 Advisory Committee Notes to Rule 23(c)(1)(C) clearly provide that (1) a class may be amended or subdivided after a determination of liability; and (2) a class may be expanded after class certification, but the two procedures may not be combined; to the contrary, paragraph seven of the Advisory Committee Notes explicitly states that "[t]he authority to amend an order under Rule 23(c)(1) before final judgment does not restore the practice of 'one-way intervention' that was

---

[4] Some courts do apply an exception to the rule against one-way intervention when a defendant waives the protection of Rule 23(c) and "elect[s] to have the merits decided before the class certification question" by moving "for summary judgment before resolution of the certification issue." *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1382 (D.C. Cir. 1980); *see also* Dkt., *Bowers v. Windstream Ky. E., LLC*, No. 3:09 Civ. 440-H, 2012 WL 216616 (W.D. Ky. Jan. 24, 2012) (defendant moved for summary judgment before entry of summary judgment for plaintiff). Even if the Court chooses to recognize that exception, it does not apply here.

rejected by the 1966 revision of Rule 23." *Id*. Thus, while certain modifications to a class may occur after a finding of liability, including decertification, courts may not enlarge class membership after class-wide liability has been adjudicated, as the district court did here.

Plaintiff does not dispute, nor could he, that Rule 23 prohibits one-way intervention. *Cf.* 28 U.S.C. § 2072(b) (Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right"). Instead, plaintiff's position in opposition to the Republic's successful Rule 23(f) Petition was that because there was never any risk that newly eligible class members would lose on the merits in their suit against the Republic, the Republic has failed to establish prejudice, and thus the doctrine did not apply.

As an initial matter, there is no textual basis in Rule 23 for plaintiff's claim that the bar on one-way intervention only applies when class suits face a certain degree of risk. To the contrary, as noted above, Rule 23(c)(1)-(3) requires as a matter of law that class certification decisions and notice occur early in the proceeding such that all eligible class members are either excluded from the class or bound by the court's liability determination. *See supra* at 22-24. Nowhere in Rule 23 is there a requirement that a defendant establish that plaintiffs face some unspecified level of risk in order to be entitled to these procedural safeguards.

26

It is therefore unsurprising that when discussing Rule 23(c)'s prohibition on new class members intervening in damages class actions after a determination on the merits, courts do not even mention plaintiffs' "theory." As explained by the Supreme Court:

> potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation "as soon as practicable after the commencement" of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class. Thereafter they are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse.

*Am. Pipe*, 414 U.S. at 549; *see also, e.g.*, *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999) ("The rule bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment."); *In re Vivendi Universal*, 284 F.R.D. at 149 ("Under the current policy against one-way intervention, it would be improper to let plaintiffs opt into a class after a trial on the merits has concluded.").

Moreover, to the extent plaintiff relies on the fact that the Republic has not contested before U.S. courts contractual liability for its 2001 debt default, that supports the wisdom of proceeding to calculate damages on an individualized

27

basis as the Court instructed, *Seijas II*, 493 F. App'x at 160. Though there is no dispute that the Republic, suffering the worst economic collapse in its modern history, defaulted on debt, there remains a substantial dispute about the extent that any particular individual or entity claims it is entitled to damages due to that default. In such instances, the Court has made clear the variety of procedures available to district courts, including "appointing a magistrate judge or special master to preside over individual damages proceedings" or "decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages." *In re Visa Check/MasterMoney Antitrust Litig. (Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.)*, 280 F.3d 124, 141 (2d Cir. 2001). *Cf. Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (Rule 23(b)(3) class actions should not be certified if plaintiffs fail to establish "that damages are capable of measurement on a classwide basis."). As these examples indicate, Rule 23 contemplates individualized damages procedures, which can be readily applied to a properly defined class, but nothing in the Rule supports plaintiff's demand for a class definition that the Rule flatly prohibits.

Individualized damages procedures are particularly appropriate here. *Seijas II*, 493 F. App'x at 160. Plaintiff has effectively conceded that he is either unable or unwilling to provide an accurate calculation of aggregate damages, and, in any event, he has not done so. Thus, under any class definition, class members

28

will only be able to collect on their claims by coming forward individually and presenting proof of ownership. *That* is the way to avoid entry of an improper judgment, such as those condemned by the *Seijas* decisions, not by trying to circumvent this Court's decision by certifying a new class that violates Rule 23.

## CONCLUSION

For the foregoing reasons, this Court should reverse and vacate the Order and remand to the district court to calculate damages on an individualized basis under the continuous holder class definition.

Dated: New York, New York
       March 10, 2015

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____/s/ Carmine Boccuzzi_____
       Jonathan I. Blackman (jblackman@cgsh.com)
       Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

*Of Counsel:*

Daniel J. Northrop          One Liberty Plaza
Jacob H. Johnston           New York, New York 10006
                            (212) 225-2000

                            Attorneys for the Republic of Argentina

29

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.     This brief complies with Fed. R. App. P. 32(a)(7)(B)(i),

because it contains 6,913 words, excluding the parts of the brief exempted by Fed.

R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a proportionally spaced typeface using

Microsoft Word in 14-point Times New Roman font.

Dated:  New York, New York
         March 10, 2015

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:  _____/s/ Carmine Boccuzzi_____
Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

30