14-4385
*Brecher v. Republic of Argentina*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2015

(Argued: August 21, 2015      Decided: September 16, 2015)
(Amended: November 18, 2015)

Docket No. 14-4385

————————

HENRY H. BRECHER,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

-v.-

REPUBLIC OF ARGENTINA,

*Defendant-Appellant.*

————————

Before:
        CALABRESI, RAGGI, and WESLEY, *Circuit Judges.*

————————

Appellant the Republic of Argentina appeals from an order entered on August 29, 2014, in the United States District Court for the Southern District of New York (Griesa, *Judge*), modifying the class definition.  On November 25, 2014,

CERTIFIED COPY ISSUED ON 11/18/2015

a panel of this Court granted permission to appeal pursuant to Federal Rule of Civil Procedure 23(f). Appellant argues that the District Court's new class definition violates the requirements of ascertainability contained in Rule 23 of the Federal Rules of Civil Procedure. We agree and hold that the class definition's reference to objective criteria is insufficient to establish an identifiable and administratively feasible class. We therefore VACATE and REMAND the case for an evidentiary hearing on damages.

> CARMINE D. BOCCUZZI (Jonathan I. Blackman, Daniel J. Northrop, Jacob H. Johnston, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellant*.
>
> JASON A. ZWEIG (Steve W. Berman, *on the brief*), Hagens Berman Sobol Shapiro LLP, New York, NY, *for Plaintiff-Appellee*.

———————————

WESLEY, *Circuit Judge*:

Defining the precise class to which Argentina owes damages for its refusal to meet its bond payment obligations and calculating those damages have proven to be exasperating tasks. In this, the fourth time this Court has addressed the methods by which damages must be calculated and the manner in which the class is defined in this case and several similar matters, *see Seijas v. Republic of Argentina* (*Seijas I*), 606 F.3d 53 (2d Cir. 2010); *Hickory Sec. Ltd. v. Republic of Argentina* (*Seijas II*), 493 F. App'x 156 (2d Cir. 2012) (summary order); *Puricelli v. Republic of Argentina* (*Seijas III*), No. 14-2104-cv(L), 2015 WL 4716474 (2d Cir. Aug.

10, 2015), we again must vacate the District Court's order and remand for specific proceedings.

By now, the factual background of these cases is all too familiar. After Argentina defaulted on between $80 and $100 billion of sovereign debt in 2001, *see Seijas I*, 606 F.3d at 55, numerous bondholders, including Appellee here and those in the related *Seijas* cases, filed suit. In Appellee's suit, the District Court entered an order on May 29, 2009, that certified a class under a continuous holder requirement, *i.e.*, the class contained only those individuals who, like Appellee, possessed beneficial interests in a particular bond series issued by the Republic of Argentina from the date of the complaint—December 19, 2006—through the date of final judgment in the District Court. *Cf. Seijas I*, 606 F.3d at 56 (same requirement in class definition). In earlier cases, the Republic had argued that secondary trading on the market made the classes "too fluid" to satisfy the requirements of Rule 23; the District Court rejected this argument in part because of the continuous holder definition. *See H.W. Urban GmbH v. Republic of Argentina*, No. 02 Civ. 5699(TPG), 2004 WL 307293, at *3 (S.D.N.Y. Feb. 17, 2004).

The Republic's liability has not been seriously contested in this litigation. *See Brecher v. Republic of Argentina*, No. 06 Civ. 15297(TPG), 2010 WL 3584001, at

*1 (S.D.N.Y. Sept. 14, 2010).  After this Court held in *Seijas I* and *II* that the

District Court's method of calculating damages was inflated and remanded with

instructions to conduct an evidentiary hearing, *see Seijas I*, 606 F.3d at 58–59;

*Seijas II*, 493 F. App'x at 160, the District Court entered an order in this case

granting summary judgment to the Appellee on liability but denying summary

judgment on damages in order to hold a similar evidentiary hearing.  Order,

*Brecher v. Republic of Argentina*, No. 06 Civ. 15297 (TPG) (S.D.N.Y. Aug. 30, 2012),

ECF No. 70.  In place of the hearing, however, the Appellee in this case offered

the District Court an alternative solution to its difficulties in assessing damages—

simply modifying the class definition by removing the continuous holder

requirement and expanding the class to all holders of beneficial interests in the

relevant bond series without limitation as to time held.  Despite the fact that a

judgment on the merits had already been issued, the District Court granted the

motion.  Argentina promptly sought leave to appeal under Rule 23(f) of the

Federal Rules of Civil Procedure, and on November 25, 2014, a panel of this

Court granted leave to appeal.

4

## DISCUSSION

We review a district court's class certification rulings for abuse of discretion, but we review *de novo* its conclusions of law informing that decision. *In re Pub. Offerings Secs. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006). The District Court below neither articulated a standard for ascertainability of its new class nor made any specific finding under such a standard. Absent that analysis, we must determine whether the District Court's ultimate decision to modify the class "rests on an error of law . . . [or] cannot be located within the range of permissible decisions." *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir. 2003) (internal quotation marks omitted). The District Court's decision rests upon an error of law as to ascertainability; the resulting class definition cannot be located within the range of permissible options.

Like our sister Circuits, we have recognized an "implied requirement of ascertainability" in Rule 23 of the Federal Rules of Civil Procedure. *In re Pub. Offerings Secs. Litig.*, 471 F.3d at 30; *accord, e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). While we have noted this requirement is distinct from predominance, *see In re Pub. Offerings Secs. Litig.*, 471 F.3d at 45, we have not further defined its

5

content.  We here clarify that the touchstone of ascertainability is whether the

class is "sufficiently definite so that it is administratively feasible for the court to

determine whether a particular individual is a member."  7A CHARLES ALAN

WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 1760 (3d

ed. 1998); *see also Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742(DLC), 2010

WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010) (a class must be "readily identifiable,

such that the court can determine who is in the class and, thus, bound by the

ruling" (internal quotation marks omitted)).  "A class is ascertainable when

defined by objective criteria that are administratively feasible and when

identifying its members would not require a mini-hearing on the merits of each

case."  *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)

(citations and internal quotation marks omitted).

On appeal, Appellee argues that a class defined by "reference to objective

criteria . . . is all that is required" to satisfy ascertainability.  Appellee Br. 19.  We

are not persuaded.  While objective criteria may be necessary to define an

ascertainable class, it cannot be the case that any objective criterion will do.[1]  A

---

[1] Even Appellee's principal sources for this standard use the requirement in context to observe that *subjective* criteria are inappropriate and, thus, any criteria used in defining a class need to be "objective."  Appellee Br. 20 (citing *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 HB, 2003 WL 21659373, at *2 (S.D.N.Y. July 15, 2003); *In re Methyl*

class defined as "those wearing blue shirts," while objective, could hardly be

called sufficiently definite and readily identifiable; it has no limitation on time or

context, and the ever-changing composition of the membership would make

determining the identity of those wearing blue shirts impossible.  In short, the

use of objective criteria cannot alone determine ascertainability when those

criteria, taken together, do not establish the definite boundaries of a readily

identifiable class.[2]

This case presents just such a circumstance where an objective standard—

owning a beneficial interest in a bond series without reference to time owned[3]—

is insufficiently definite to allow ready identification of the class or the persons

---

*Tertiary Butyl Ether (MBTE) Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002);
MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222, at 270 (2004)).  This approach
accords with our prior discussions of objective criteria.  *See In re Initial Pub. Offerings
Secs. Litig.*, 471 F.3d at 44–45.

[2] Of course, "identifiable" does not mean "identified"; ascertainability does not require
a complete list of class members at the certification stage.  *See* 1 MCLAUGHLIN ON CLASS
ACTIONS § 4:2 (11th ed. 2014) ("The class need not be so finely described, however, that
every potential member can be specifically identified at the commencement of the
action; it is sufficient that the general parameters of membership are determinable at the
outset.").

[3] *See, e.g., id.* § 4:2 ("[T]he failure to propose an appropriate time limitation in defining
the class period usually will result in a finding that the class is impermissibly overbroad
and not ascertainable.").  The result of this omission here is that the identity of class
members will remain fluid even following entry of judgment, since nothing in the new
class definition freezes the class composition at any designated time.

who will be bound by the judgment. *See Weiner*, 2010 WL 3119452, at *12. The secondary market for Argentine bonds is active and has continued trading after the commencement of this and other lawsuits. *See NML Capital Ltd. v. Republic of Argentina*, 699 F.3d 246, 251 (2d Cir. 2012); *Seijas II*, 493 F. App'x at 160. Without a defined class period or temporal limitation, such as the continuous holder requirement, the nature of the beneficial interest itself and the difficulty of establishing a particular interest's provenance in the particular circumstances of this case make the objective criterion used here inadequate. *Cf. Bakalar v. Vavra*, 237 F.R.D 59, 65–66 (S.D.N.Y. 2006) (necessity of individualized inquiries into provenance of artwork made class insufficiently "precise, objective and presently ascertainable" (internal quotation marks omitted)).

Appellee argues that the class here is comparable to those cases involving gift cards, which are fully transferable instruments. However, gift cards are qualitatively different: For example, they exist in a physical form and possess a unique serial number. By contrast, an individual holding a beneficial interest in Argentina's bond series possesses a right to the *benefit* of the bond but does not hold the physical bond itself. Thus, trading on the secondary market changes only to whom the benefit enures. Further, all bonds from the same series have

the same trading number identifier (called a CUSIP/ISIN), making it practically

impossible to trace purchases and sales of a particular beneficial interest. Thus,

when it becomes necessary to determine who holds bonds that fall inside (or

outside) of the class, it will be nearly impossible to distinguish between them

once traded on the secondary market without a criterion as to time held. *See Ebin*

*v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (observing that

ascertainability requirement "prevent[s] the certification of a class whose

membership is truly indeterminable" (internal quotation marks omitted)).

A hypothetical illustrates this problem. Two bondholders—*A* and *B*—each

hold beneficial interests in $50,000 of bonds. *A* opts out of the class, while *B*

remains in the class. Following a grant of summary judgment on liability, both *A*

and *B* then sell their interests on the secondary market to a third party, *C*. *C* now

holds a beneficial interest in $100,000 of bonds, half inside the class and half

outside the class. If *C* then sells a beneficial interest in $25,000 of bonds to a

fourth party, *D*, the absence of a temporal limitation like the continuous holder

requirement ensures that neither the purchaser nor the court can ascertain

whether *D*'s beneficial interest falls inside or outside of the class.[4]  Even if there were a method by which the beneficial interests could be traced, determining class membership would require the kind of individualized mini-hearings that run contrary to the principle of ascertainability.  *See Charron*, 269 F.R.D. at 229; *Bakalar*, 237 F.R.D. at 64–66.

The lack of a defined class period, taken in light of the unique features of the bonds in this case, thus makes the modified class insufficiently definite as a matter of law.  The expansion of the class after a judgment on liability further raises the specter of one-way intervention that motivated the 1966 amendments to Rule 23.  *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) ("The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments."); *see also Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999) ("The rule bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to

---

[4] This hypothetical was posed by the panel at oral argument; significantly, counsel for Appellee was unable to offer a method by which the District Court would in this case be able to make this determination.

10

take advantage of the judgment.").  Although the class as originally defined by

the District Court may have presented difficult questions of calculating damages,

it did not suffer from a lack of ascertainability.  The District Court erred in

attempting to address those questions by introducing such a defect into the class

definition, after liability had already been determined.

There remains the question of determining damages on remand.  Given

that Appellee here is identically situated to the *Seijas* plaintiffs and this Court has

already addressed the requirements for determining damages in those cases, we

conclude that the District Court should apply the same process dictated by *Seijas*

*II* for calculating the appropriate damages:

> Specifically, it shall: (1) consider evidence with respect
> to the volume of bonds purchased in the secondary
> market after the start of the class periods that were not
> tendered in the debt exchange offers or are currently
> held by opt-out parties or litigants in other proceedings;
> (2) make findings as to a reasonably accurate, non-
> speculative estimate of that volume based on the
> evidence provided by the parties; (3) account for such
> volume in any subsequent damage calculation such that
> an aggregate damage award would "roughly reflect"
> the loss to each class, *see Seijas I,* 606 F.3d at 58–59; and
> (4) if no reasonably accurate, non-speculative estimate
> can be made, then determine how to proceed with
> awarding damages on an individual basis. Ultimately,
> if an aggregate approach cannot produce a reasonable

11

approximation of the actual loss, the district court must
adopt an individualized approach.

493 F. App'x at 160; *see also Seijas III*, 2015 WL 4716474, at *4 (repeating

instructions). The hearing will ensure that damages do not "enlarge[] plaintiffs'

rights by allowing them to encumber property to which they have no colorable

claim." *Seijas I*, 606 F.3d at 59.

## CONCLUSION

Because we conclude the District Court's order violated the requirement of

ascertainability contained in Rule 23, it is not necessary for us to reach the

remaining issues raised by Appellant. Therefore, for the reasons stated above,

the order of the District Court is VACATED, and the case is REMANDED for an

evidentiary hearing on damages.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

12